```
 1  JOSEPH D. LEE (State Bar No. 110840)
    joseph.lee@mto.com
 2  MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, Fiftieth Floor
 3  Los Angeles, California 90071-3426
    Telephone:    (213) 683-9100
 4  Facsimile:    (213) 687-3702

 5  JEREMY A. LAWRENCE (State Bar No. 270866)
    jeremy.lawrence@mto.com
 6  MUNGER, TOLLES & OLSON LLP
    560 Mission Street, Twenty-Seventh Floor
 7  San Francisco, California 94105
    Telephone:    (415) 512-4000
 8  Facsimile:    (415) 512-4077

 9  Attorneys for Defendants BRIUS
    MANAGEMENT CO., and BRIUS, LLC
10
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY HEARDEN; individually and as successor in interest to ARTHUR TRENERRY (Decedent); JOHANNA TRENERRY; individually and as successor in interest to ARTHUR TRENERRY (Decedent); IRENE KELLEY, individually and as successor in interest to ARTHUR TRENERRY (Decedent); SALLY KELLEY, individually and as successor in interest to ARTHUR TRENERRY (Decedent); MATTHEW TRENERRY, individually and as successor in interest to ARTHUR TRENERRY (Decedent); WILLIAM TRENERRY; individually and as successor in interest to ARTHUR TRENERRY (Decedent); BEVERLY FULLER, individually and as successor in interest to ARTHUR TRENERRY (Decedent); ANTHONY TRENERRY, individually and as successor in interest to ARTHUR TRENERRY Decedent; SHARON MCMAINES, individually and as successor in interest to WAYNE MCMAINES (Decedent); JANIS BODINE, individually and as successor in interest to WAYNE MCMAINES (Decedent); DENNIS MCMAINES, individually and as successor in interest to WAYNE MCMAINES (Decedent); DARLYN DULANEY, individually and as successor in interest to GENE WALLACE | No. 2:22-00588<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION** |

-1-
NOTICE OF REMOVAL

| | |
|---|---|
| 1 | (Decedent); KARLENE WALLACE, individually and as successor in interest to |
| 2 | GENE WALLACE (Decedent); JEREMIAH BOENINGER, individually and as successor |
| 3 | in interest to REINHILD BOENINGER (Decedent); SANDRA BRYANT, individually |
| 4 | and as successor in interest to REINHILD BOENINGER (Decedent); TAMARA |
| 5 | DUKES, individually and as successor in interest to CHERIE SCOTT (Decedent); |
| 6 | ROBERT RATHER, individually and as successor in interest to CHERIE SCOTT |
| 7 | (Decedent); LARRY RIGGS, individually and as successor in interest to ADA RIGGS |
| 8 | (Decedent); ROBERT RIGGS, individually and as successor in interest to ADA RIGGS |
| 9 | (Decedent); SALLY SORENSON, individually and as successor in interest to |
| 10 | ESTHER SHAFER (Decedent); TERRIE CALLAWAY, individually and as successor |
| 11 | in interest to LARRY JOHNSON (Decedent); ROBERT GUTIERRES, individually and as |
| 12 | successor in interest to CHRISTINE GUTIERRES (Decedent); DELORES |
| 13 | GUTIERRES, individually and as successor in interest to CHRISTINE GUTIERRES |
| 14 | (Decedent); CARYL ENDICOTT, individually and as successor in interest to |
| 15 | EMMA HART (Decedent); DAMON WHITE, individually and as successor in interest to |
| 16 | DANNY WHITE (Decedent); CAROLYN SILVA, individually and as successor in |
| 17 | interest to RICHARD MATTOS (Decedent); PAMELA SANTOS, individually and as |
| 18 | successor in interest to RICHARD MATTOS (Decedent); GARY MATTOS, individually |
| 19 | and as successor in interest to RICHARD MATTOS (Decedent); GORDON FARMER, |
| 20 | individually and as successor in interest to NICHOLAS FARMER (Decedent); SCOTT |
| 21 | FARMER, individually and as successor in interest to NICHOLAS FARMER (Decedent); |
| 22 | CHARLES BALDING, individually and as successor in interest to CHARMAINE |
| 23 | TAPPEN (Decedent); LEONARD BALDING, individually and as successor in interest to |
| 24 | CHARMAINE TAPPEN (Decedent); and RONALD FRISBEY, individually and as |
| 25 | successor in interest to BONITA FRISBEY (Decedent) |
| 26 | Plaintiff, |
| 27 | vs. |
| 28 | |

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5 | WINDSOR REDDING CARE CENTER, LLC; SHLOMO RECHNITZ , BRIUS MANAGEMENT CO.; BRIUS, LLC; LEE SAMSON, an individual; S&F MANAGEMENT COMPANY; and DOES 1 through 50, inclusive,<br><br>                    Defendants. |

Defendants Brius Management Co. and Brius, LLC (together, the "Brius Defendants"), by and through their undersigned counsel, hereby remove this action from the Superior Court of the State of California for Shasta County to the United States District Court for the Eastern District of California Court on the following grounds, reserving all defenses, including arbitrability, and reserving all objections to venue based on 42 U.S.C. § 247d-6d(e)(1).

## **Jurisdiction**

1.  This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and it is therefore subject to removal to this Court under 28 U.S.C. § 1441(a).  There are two grounds for federal question jurisdiction in this case: complete preemption under the Public Readiness and Emergency Preparedness Act (PREP Act) and the embedded federal question doctrine.

2.  This Court also has subject matter jurisdiction over this matter under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

3.  To the extent any of Plaintiffs' claims are deemed to fall outside of the foregoing federal statutes, this Court has supplemental jurisdiction over such claims under 28 U.S.C. § 1367(a) because any such claims are part of the same case or controversy as the claims over which this Court has federal jurisdiction.  The Brius Defendants do not concede that supplemental jurisdiction is necessary to support federal jurisdiction over any of Plaintiffs' claims, but raise this as an alternative basis for the Court to exercise jurisdiction in the event that the Court disagrees with the Brius Defendants' position.

4.  The PREP Act completely preempts Plaintiffs' claims because it creates an "exclusive cause of action" and "set[s] forth procedures and remedies governing that cause of

action," such that it "wholly displaces the state-law cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

5. The embedded federal question doctrine requires federal courts to exercise jurisdiction where resolution of substantial disputed federal issues are necessary to the case, and where the exercise of federal jurisdiction will not interfere with federal-state balance. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). In light of the PREP Act provisions discussed in greater detail below, the requirements for exercising federal jurisdiction under this standard are satisfied here.

6. Federal officer removal provides a basis for removal of claims asserted against persons assisting federal officials and agencies with performing their official duties. 28 U.S.C. § 1442(a)(1). This statute is liberally construed to include private actors such as government contractors providing goods or services to the government. This lawsuit arises from alleged COVID-19 deaths at a skilled nursing facility, Windsor Redding Care Center ("WRCC"), that was allegedly managed by the Brius Defendants. WRCC contracts with, and is subject to extensive regulation and control by, the federal government, and Plaintiffs' claims relate to WRCC and the Brius Defendants' compliance with federal law and regulatory guidance.

7. The Brius Defendants acknowledge that the Ninth Circuit has rejected similar jurisdictional arguments in *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679 (9th Cir. 2022). The Brius Defendants file this Notice of Removal in order to preserve their arguments for review, including by the Ninth Circuit sitting *en banc* and by the United States Supreme Court.

**Procedural Requirements**

8. The Brius Defendants are filing this Notice of Removal pursuant to 28 U.S.C. § 1446.

9. The other defendants who have been served, Windsor Redding Care Center, LLC and S&F Management Company, consent to the removal of this action. Undersigned counsel is informed and believes that Defendants Shlomo Rechnitz and Lee Samson have not been served.

10. This Notice of Removal is timely. A notice of removal must be filed within 30 days after the defendant is served with the pleadings. 28 U.S.C. § 1446(b)(1). The Brius

Defendants were served the summons on May 6, 2022. Pursuant to Federal Rule of Civil Procedure 6(a)(1)(C), the 30-day deadline for filing this Notice of Removal expires on June 6, 2022. *See, e.g.*, *Malloy v. Regents of the Univ. of Cal.*, 2021 WL 4269365, at *4 (N.D. Cal. Aug. 18, 2021) ("Where the deadline [for removal] falls on a weekend, however, it is extended to the next regular business day."); *Yanik v. Countrywide Home Loans, Inc.*, 2010 WL 4256312, at *3 n.6 (C.D. Cal. Oct. 18, 2010) ("Because 30 days from July 22, 2010 falls on a weekend, defendants had until August 23, 2010 to remove.").

11. Copies of the state court files, including those that have been served on the Brius Defendants, are attached hereto as **Exhibits A** through **K**.

12. A copy of the state court docket index is attached hereto as **Exhibit L**.

## The PREP Act

13. The PREP Act is not an ordinary preemption statute. Rather, like ERISA—which is one of the laws that creates exclusive federal jurisdiction under the complete preemption doctrine—the PREP Act contains an "interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'" *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361 (1980)). Where comprehensive federal statutes demonstrate that "Congress intended [a] federal cause of action to be exclusive[,]" federal courts must exercise jurisdiction, even over claims that are nominally brought under state law. *Beneficial*, 539 U.S. at 9 n.5.

14. In particular, the PREP Act provides broad immunity to any "covered person" against any claims under federal or state law "for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure," as well as any claims with a causal relationship therewith, if the Secretary of Health and Human Services (HHS Secretary) determines that there is a public health emergency and such immunity is warranted. 42 U.S.C. § 247d-6d(a)(1), (a)(2)(B); *see also* 42 U.S.C. § 247d-6d(b). "Loss" is defined broadly as "any type of loss, including" but not limited to death, physical, mental, or emotional injury, and fear thereof. 42 USC § 247d-6d(a)(2)(A)(i)-(iii). "Covered

countermeasures" under the PREP Act include, generally speaking, diagnostic devices (such as COVID-19 tests), NIOSH-approved respirators, and other FDA-approved personal protective equipment (PPE), such as gowns, face masks, and face shields. 42 U.S.C. § 247d-6d(i)(1); *see, e.g.*, Dep't of Health and Human Services General Counsel, Advisory Opinion on the Public Readiness and Emergency Preparedness Act and The March 10, 2020 Declaration Under the Act (May 19, 2020); FDA, Combating COVID-19 with Medical Devices, https://www.fda.gov/media/136702/download.

15. "Covered persons" include, among other things, any individual or entity who "established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure," as well as any individual or entity "authorized to prescribe, administer, or dispense such countermeasures…." 42 U.S.C. § 247d-6d(i)(2)(B)(iii)-(iv); 42 U.S.C. § 247d-6d(i)(6); 42 U.S.C. § 247d-6d(i)(8)(A).

16. The PREP Act's immunity provision applies broadly to all claims for loss, including death and physical, mental, or emotional injury—precisely the type of injuries alleged here. 42 U.S.C. § 247d-6d(a)(2)(A). The immunity provision extends to any claim for such loss "that has a causal relationship with the administration to or use by an individual of a covered countermeasure…." 42 U.S.C. § 247d-6d(a)(2)(B).

17. The HHS Secretary invoked the PREP Act's immunity provision with respect to the COVID-19 pandemic on March 17, 2020 by issuing the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, which has been subsequently amended and reissued. *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), *amended by* 85 Fed. Reg. 21012 (Apr. 15, 2020), 85 Fed. Reg. 35100 (June 8, 2020), 85 Fed. Reg. 52136 (Aug. 24, 2020), 85 Fed. Reg. 79190 (Dec. 9, 2020), 86 Fed. Reg. 7872 (Feb. 2, 2021), 86 Fed. Reg. 9516 (Feb. 16, 2021), *as corrected by* 86 Fed. Reg. 10588 (Feb. 22, 2021), and 86 Fed. Reg. 14462 (Mar. 16, 2021), 86 Fed. Reg. 41977 (Aug 4, 2021), 87 Fed. Reg. 982 (Jan. 7. 2022). The HHS Secretary declared that COVID-19 was a public health emergency for purposes of PREP Act immunity. The declarations confirmed, among other things,

that covered persons' "manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures" were subject to PREP Act immunity, and that COVID-19 diagnostic testing and NIOSH-approved respirators constituted Covered Countermeasures.  85 Fed. Reg. at 15201; 85 Fed. Reg. at 35102.

18. The PREP Act establishes a "sole exception" to the broad immunity discussed above: "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct … by such covered person."  42 U.S.C. § 247d-6d(d)(1).  Such claims "shall be filed and maintained only in the United States District Court for the District of Columbia."  *Id.*, § 247d-6d(e)(1).

19. To remedy losses that may not be compensable under the exclusive federal civil cause of action, the PREP Act also established an administrative compensation fund to pay claims for certain injuries (as determined by the HHS Secretary) that are "directly caused by the administration or use of a covered countermeasure" where the HHS Secretary has issued the type of declaration discussed above.  42 U.S.C. § 247d-6e(b)(1).

20. This administrative compensation system provides further evidence that Congress intended for the PREP Act to provide an exclusive remedy.  The statute explicitly states that the compensation fund remedy "shall be exclusive of any other civil action or proceeding for any claim or suit this section encompasses," except for the exclusive federal civil cause of action for willful misconduct.  42 U.S.C. § 247d-6e(d)(4).  Even individuals seeking to pursue the federal civil cause of action must first exhaust the administrative compensation process and make an election between either accepting a payment from the compensation fund or pursuing a civil claim. 42 U.S.C. § 247d-6e(d)(1).

21. Plaintiffs' claims are subject to exclusive federal jurisdiction under the PREP Act because they allege that the defendants engaged in misconduct in the care rendered to the decedent Plaintiffs relating to and in connection with the exposure, diagnosis, and treatment of COVID-19 and the distribution, administration, or use of medical countermeasures, like COVID-19 testing and PPE, to prevent the spread of COVID-19 within the skilled nursing facility (WRCC) where

the decedent Plaintiffs allegedly resided.  First Amended Complaint (FAC), ¶¶ 8, 70-74, 96, 107 (attached as **Exhibit E** hereto).

22. In particular, Plaintiffs' claims challenge the defendants' actions and decisions regarding the deployment and use of scarce COVID-19 testing equipment and PPE during the height of the pandemic.  FAC, ¶¶ 70-74.  These actions constitute covered countermeasures under the PREP Act.

23. At the time of the allegations set forth in the FAC, respirators and PPE used at WRCC were approved by the FDA as a qualified pandemic or epidemic product and/or were respiratory protective devices approved by the National Institute for Occupational Safety and Health under 42 CFR part 84, and were administered, delivered, distributed, and dispensed in accordance with the public health and medical response of the applicable regulatory authorities, or reasonably believed so by the Brius Defendants.

24. Because Plaintiffs' claims challenge the defendants' actions and decisions with respect to covered countermeasures in response to the COVID-19 pandemic, their claims are completely preempted by the PREP Act and therefore are subject to this Court's jurisdiction.

25. Alternatively, Plaintiffs' claims are completely preempted because they involve claims for the type of willful misconduct for which Congress has provided an exclusive federal civil remedy.  The Third Circuit has concluded that the PREP Act establishes complete preemption with respect to claims of willful misconduct.  *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 409 (3d Cir. 2021).  The Fifth Circuit has assumed the same without deciding the question.  *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 586 (5th Cir. 2022).[1]

---

[1] Both courts ultimately concluded that the plaintiffs' claims in the cases at issue involved allegations that amounted only to negligence, not willful misconduct.  *Maglioli*, 16 F.4th at 411; *Mitchell*, 28 F.4th at 587.  The Brius Defendants do not fully agree with these courts' approaches.  By focusing on whether the plaintiff's claims alleged a viable cause of action for willful misconduct authorized under the PREP Act, these courts construed the complete preemption doctrine too narrowly.  As the Supreme Court has explained, a state cause of action may be completely preempted "even if the elements of the state cause of action did not precisely duplicate the elements of [the completely preempted federal] claim."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 216 (2004) (*Davila*).

26. Plaintiffs' claims are different from the claims addressed by the Third and Fifth Circuits. Without conceding that Plaintiffs have alleged viable willful misconduct claims under the PREP Act, it is clear that Plaintiffs' claims involve the type of alleged conduct that results in complete preemption under the Third Circuit's analysis. Plaintiffs allege that the defendants engaged in misconduct involving covered countermeasures under the PREP Act "willfully and repeatedly," with "conscious disregard" of Plaintiffs' "rights, health, and safety," and in a "deliberate … and intentional manner in order to injure and damage" the decedent Plaintiffs. *Id.* ¶¶ 96, 103; *see also id.* ¶¶ 106, 109, 112 (similar). It makes no difference that they describe their claims as based on willful disregard, rather than employing the statutory phrase "willful misconduct." "[D]istinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade'" complete preemption "simply 'by relabeling their'" claims. *Davila*, 542 U.S. at 214 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 217 (1985)).

27. The Brius Defendants acknowledge that this Court is bound by the Ninth Circuit's decision in *Saldana*, which concluded that the PREP Act does not give rise to complete preemption even for willful misconduct claims. *Saldana*, 27 F.4th at 688. It is precisely that type of conflict between the Circuits that warrants review by the Ninth Circuit *en banc* or the Supreme Court.

### Embedded Federal Question Doctrine

28. In the event the Court does not conclude that jurisdiction is proper under the complete preemption doctrine, jurisdiction is nevertheless appropriate under the embedded federal question doctrine elaborated most prominently in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). In *Grable*, the Court clarified that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313-14).

29. These four factors are present here for all the reasons discussed above with respect to the complete preemption doctrine. This case turns on a substantial, necessary, and disputed question of federal law: what is the scope of Plaintiffs' cause of action in light of the PREP Act's civil cause of action, immunities, and preemptions. And these issues are clearly "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," *id.*, because Congress has explicitly indicated that these claims must be *exclusively* pursued in certain federal courts.

30. The Brius Defendants acknowledge that this Court is bound by the Ninth Circuit's decision in *Saldana*, which concluded that the complaint before the Ninth Circuit, with its particular allegations, did not "present an embedded federal question." *Saldana*, 27 F.4th at 689 ("On its face, the [willful misconduct] issue is not a 'substantial' part of the Saldanas' complaint because, according to the complaint, only some of the steps Glenhaven allegedly took, and did not take, may have involved a 'covered person,' under the PREP Act. …"). However, whereas in *Saldana* the plaintiffs alleged that the defendants *did not* engage in covered activities such as testing and using PPE (and thus were not "covered persons" because they did not engage in "covered countermeasures"), Plaintiffs here *do* allege that the defendants are covered persons who engaged in covered countermeasures, as detailed above. Plaintiffs' claims thus present the embedded federal question of whether their allegations amount to the type of "willful misconduct" for which Congress provided an exclusive federal forum. Alternately, the Brius Defendants raise this issue in order to preserve their arguments for review by the Ninth Circuit *en banc* or the Supreme Court.

**Federal Officer Removal Statute**

31. The federal officer removal statute, 28 U.S.C. § 1442(a)(1), permits removal to federal court by "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity for or relating to any act under color of such office …."

32. To be a "person acting under" a federal officer, the defendant need not be an official government agent or employee. This statutory language is "broad" and "must be liberally

construed." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007) (internal quotation marks omitted).  Nearly a century ago, the Supreme Court indicated that a private chauffeur who had driven a group of federal agents would be able to invoke the federal officer removal statute to the same extent as the agents themselves.  *Id.* at 150 (citing *Maryland v. Soper (No. 1)*, 270 U.S. 9, 30 (1926)).  Of course, not every private actor is entitled to invoke the federal officer removal statute.  Defendants cannot invoke the federal officer removal statute simply by arguing that they are subject to federal regulations, even complex ones.  *See, e.g.*, *id.* at 153.  But in a particularly apt body of cases, courts have frequently held that government contractors are entitled to invoke the removal statute.  *See id.* at 153-54.  As the Supreme Court explained in describing these cases, "the private contractor in such cases is helping the Government to produce an item that it needs.  The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks."  *Id.* at 153.  By providing materials that the government had contracted for, these contractors "at least arguably … performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform."  *Id.* at 154; *see also, e.g.*, *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (applying this rule to contractor that produced Agent Orange).

33. Skilled nursing facilities like WRCC are analogous to government contractors, and in fact are under even tighter regulatory control than those contractors that have successfully invoked the federal officer removal statute.  By contracting with skilled nursing facilities and providing funds for seniors to use these facilities, the federal government has demonstrated a strong interest in ensuring that such facilities are available for those who need them and has exercised substantial control over those facilities.

34. Moreover, absent federal contracts with private providers such as WRCC, it is plausible or even probable that the federal government would elect to operate these facilities itself to ensure that necessary care remains available.  Indeed, the National Guard has been deployed to assist various skilled nursing facilities around the country to ensure their continued operation during the COVID-19 pandemic, and the federal government has distributed billions of dollars to skilled nursing facilities to ensure their continued operation during the pandemic.

35. The Centers for Medicare & Medicaid Services (CMS) and its delegate in California, the Department of Public Health (DPH), exercise a level of oversight and control over licensed skilled nursing facilities that goes beyond the "usual regulator/regulated relationship." *Watson*, 551 U.S. at 157. The HHS Secretary has broad discretion to terminate or refuse to renew CMS's contracts with skilled nursing facilities in a variety of situations. *See* 42 U.S.C. § 1395cc(b); 42 C.F.R. § 489.53. CMS and DPH exercise oversight through a continuous review process known as surveying. 42 C.F.R. § 488.10. Each state has its own State Survey Agency. California's survey process is administered by the DPH. A skilled nursing facility that does not substantially comply with the applicable requirements risks having its participation in the Medicare program terminated. For example, if CMS determines that a provider has not complied with applicable requirements, the provider may be subject to termination. *Id.* § 488.9(c)(3). Even absent such a finding, failure to cooperate with surveys may subject a provider agreement to termination. 42 CFR § 488.9(b)(2). While judicial review is eventually available, as a practical matter, providers nearly always depend on CMS:

> The right to appeal CMS's decision is, in many instances, a meaningless right, because it takes years to proceed through the Medicare Program's appeals process. In the meantime, many hospitals risk being forced to close their doors during this time because they cannot pay their bills if Medicare does not pay them.

Samuel R. Maizel & Michael B. Potere, *Killing the Patient to Cure the Disease: Medicare's Jurisdictional Bar Does Not Apply to Bankruptcy Courts*, 32 Emory Bankr. Dev. J. 19, 20 (2015).

36. Given the extensive regulations imposed on these facilities, virtually every facility in the country could be found to be in violation of at least some regulations and accordingly subject to potential termination. 42 U.S.C. § 1395cc(b)(2)(A); 42 C.F.R. § 488.9(c)(3). CMS accordingly is not merely the facility's regulator—it is also the facility's key business counterparty, and it has the ability to eliminate a facility's key source of funding in short order. In this context, when the HHS Secretary, CMS, or DPH provide guidance regarding best practices (as they frequently did with respect to COVID-19), licensed facilities typically treat the guidance as a mandate, not a mere suggestion. Indeed, even regulators viewed this guidance as mandatory and

binding. For example, in one of the DPH's reports on the WRCC facility, DPH wrote that certain facility staff "were not wearing full PPE as *required* in the CDC guidelines." (Emphasis added.) Various DPH reports from the WRCC facility also describe the facility's alleged failure to follow the CDC's COVID-19 guidance as a "deficiency" requiring "correction."

37. In addition, HHS and CMS issued an interim final rule effective September 2, 2020 requiring skilled nursing facilities to conduct regular COVID-19 testing of staff and residents. *See Medicare and Medicaid Programs, Clinical Laboratory Improvement Amendments (CLIA), and Patient Protection and Affordable Care Act; Additional Policy and Regulatory Revisions in Response to the COVID-19 Public Health Emergency*, 85 Fed. Reg. 54820, 54851-53, 54873 (Sept. 2, 2020); *see also* 42 C.F.R. § 483.80(h) ("The LTC facility must test residents and facility staff, including individuals providing services under arrangement and volunteers, for COVID–19.").

38. Federal officer removal also requires a minimal causal nexus between the plaintiff's claims and the defendant's acts done under the authority of a federal officer or agency. 28 U.S.C. § 1442(a)(1); *Mesa v. California*, 489 U.S. 121, 131-32 (1989) (citing *Soper (No. 1)*, 270 U.S. at 33). Specifically, the claim must be "for or relating to" the defendant's acts done under the authority of a federal officer or agency. 28 U.S.C. § 1442(a)(1). That minimal causal nexus is satisfied here because Plaintiffs' claims are related to the Brius Defendants' compliance with federal law and regulatory guidance governing the deployment of covered countermeasures such as testing and PPE.

39. Finally, federal officer removal requires the removing party to "raise a colorable federal defense." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999). The federal defenses are more than merely "colorable" here. In addition to the immunity and exclusive jurisdiction provisions discussed above, the PREP Act also contains an express preemption provision that will require dismissal of Plaintiffs' state-law claims at the appropriate juncture. *See* 42 U.S.C. § 247d-6d(b)(8).

40. The Brius Defendants acknowledge that this Court is bound by the Ninth Circuit's decision in *Saldana*, which found those defendants' claim of a "causal nexus that allows removal

under 28 U.S.C. § 1442" lacking.  *Saldana*, 27 F.4th at 684-86.  The Brius Defendants raise this issue in order to preserve their arguments for review by the Ninth Circuit *en banc* or the Supreme Court.

DATED:  June 6, 2022                    MUNGER, TOLLES & OLSON LLP


                                        By:    */s/ Jeremy A. Lawrence*
                                               JEREMY A. LAWRENCE

                                        Attorneys for Defendants BRIUS MANAGEMENT CO. and BRIUS, LLC